JOHN MCKAY, Administrator,

*vs.*

NEW ENGLAND DREDGING COMPANY.

Knox.    Opinion October 20, 1899.

93  201
f93  272

*New Trial.    Verdict.    Practice.    Damages.*

A verdict as to the defendants' liability for damages should stand and judgment be eventually rendered thereon for the plaintiff, when the law court has twice granted a new trial, upon motion of the defendant solely upon the ground that the damages are excessive.

The assessment of excessive damages by the jury upon a second trial may be set aside by the court, and damages will be assessed anew by a jury unaffected with any contention over the question of the defendants' liability.

See *McKay* v. *Dredging Co.*, 92 Maine, 454.

ON MOTION BY DEFENDANT.

This was the second trial of an action brought by an administrator, to recover damages for the loss of the life of his intestate by reason of the negligence of the defendant corporation, and in which the jury returned a verdict of $1,990 for the plaintiff. The action is brought under the provisions of chapter 124 of the statute of 1891, for the benefit of the father and mother, they being the sole heirs of the intestate.

At the trial of the first action the jury returned a verdict of $2000, which was set aside on account of the damages being excessive, the law court having ordered a new trial unless the plaintiff would remit all of the verdict above $750. The material facts will be found in the opinion of the court in the former report of the case in *McKay* v. *Dredging Co.*, 92 Maine, 454.

*D. N. Mortland and M. A. Johnson,* for plaintiff.

"No suggestion of error or misdirection on the part of the presiding justice is made, but the case is presented upon a report of the evidence; so the only consideration is whether the verdict is supported by the weight of evidence, and that depends upon what testimony was believed by the jury, and whether they were justi-

fied in believing it. It is common learning that the credit to be given witnesses is a matter peculiarly suited for a jury to decide. They see them on the stand, note their appearance and observe many indications of truth or falsehood, accurate memory or indistinct and unreliable impressions,—helps wholly wanting in the perusal of cold type." *Lewis* v. *Dwinell*, 84 Maine, 498.

Negligence: When the relation of master and servant exists, a special duty devolves upon the master to provide for the safety of his servant in many important respects. In such relationship the servant assumes the risk of injury from all ordinary dangers that necessarily accompany the employment of which he has notice before voluntarily exposing himself to them. Where the servant is injured by the failure of his master to exercise ordinary care, for his safety, his assumption of the risks of the employment will not prevent a recovery if he was in the use of ordinary care, at the time of his injury, and was discharging his duties in a usual and ordinary manner. 4 Am. & Eng. Enc., p. 50.

It is not contributory negligence for the servant to obey the orders of the master, whereby he is exposed to an unusual and unexpected danger out of the line of his employment, unless the danger was fully realized by him, and was so imminent and obvious that it was apparent to a person of ordinary prudence that an injury would follow. A servant does not stand upon the same footing as the master as respects the matter of care in inspecting and investigating the risk to which he may be exposed. He has a right to presume that the master will do his duty in that respect, so that, when directed by proper authority to perform certain services, or to perform them in a certain place, he will ordinarily be justified in obeying orders without being chargeable with contributory negligence, or with the assumption of the risks of so doing. 4 Am. & Eng. Enc. p. 66; *Cook* v. *St. Paul, etc., R. Co.*, 34 Minn. 45.

" The principal is liable, unless to obey the order was plainly to imperil life or limb. Obedience is the primary duty of the servant and he may, within reasonable bounds, trust to the superior judgment of the master." 4 Am. & Eng. Enc. note 66. *Stephens* v. *H. & St. Joseph R. R.*, 86 Mo. 221; *Keegan* v. *Cavanaugh*, 62

Mo. 230, cited in *Haley* v. *Case*, 142 Mass. p. 323; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *Campbell* v. *Eveleth*, 83 Maine, 50; *Malcomb* v. *Fuller*, 152 Mass. 160.

In case of *McKee* v. *Tourtelotte*, 167 Mass. 69, the plaintiff was told by defendant's agent that it was safe for him to work in a ditch, the sides of which afterward caved in upon him. In the opinion in that case the court say: "When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior, one, too, who, from the nature of the callings of the two men and of the superior's duty, seems likely to make the accurate forecast, and if to this is added a command to go on with his work and to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command." *Hennessy* v. *Boston*, 161 Mass. 502; *Coan* v. *Marlborough*, 164 Mass. 206.

Appreciation of risk and danger. Counsel cited: *Burgess* v. *Davis Sulphur Ore Co.*, 165 Mass. 71, in which the facts were as follows: A rock fell on plaintiff while digging in defendant's mine. Defendant's superintendent knew the rock was loose and told plaintiff to work where he did. In reply to plaintiff's question, was the rock all right, superintendent said, "yes it is all right: we tried to bar down same rock and it would not come." And the court says: "It was the duty of the superintendent, and not of the plaintiff to see that the line was safe. We are of the opinion that it was a question of fact for the jury whether the plaintiff was reasonably careful in working where he did at the time of the accident." The court further says: "In regard to dangers arising from an employee's negligence, the doctrine that a voluntary assumption of the risk precludes recovery is of practical application only when the risk is understood and appreciated by the employee, and is not assumed under such constraint of any kind as deprives the act of its voluntary character." *Fitzgerald* v. *Conn. River Paper Co.*, 155 Mass. 155; *Mahoney* v. *Dore*, 155 Mass. 513.

Damages: *Welch* v. *Me. Cent. R. R. Co.*, 86 Maine, 570; *McKay* v. *N. E. Dredging Co.*, 92 Maine, 454; 2 Sher. & Redf. Neg. §§ 709, 772; *Dalton* v. *Southeastern Ry. Co.*, 4 C. B. (N. S.) 296; *Houghkirk* v. *Del. & Hudson Canal Co.*, 92 N. Y. 224; *Oldfield* v. *N. Y. & Harlem R. R. Co.*, 14 N. Y. 310; *Louisville & Nash. Ry. Co.* v. *Morgan*, 22 Ala. 20; *Kelley* v. *Chic. Mil. & St. Paul Ry. Co.*, 50 Wis. 381; *Birket* v. *Knickerbocker Ice Co.*, 110 N. Y. 504; *Amour* v. *Czischki*, 59 Ill. App. 17.

*Clarence Hale, Joseph E. Moore, A. F. Belcher and Frederick Hale*, for defendant.

Counsel argued: First. The verdict of the jury was against evidence in the case, said evidence showing that the survivors suffered very small pecuniary loss if any, by the death of the plaintiff's intestate. The damages assessed were manifestly disproportionate and extravagant.

Second. The evidence discloses that the plaintiff's intestate assumed whatever risk he was taking, and so was guilty of contributory negligence. No verdict for the plaintiff can be sustained.

Third. The evidence does not disclose any negligence on the part of the defendant company.

Counsel cited: Stat. 1891, c. 124; Act 9 and 10 Vict. c. 93; *Sawyer* v. *Perry*, 88 Maine, 42; Tiffany's Death by Wrongful Act, p. 21; *McKay* v. *N. E. Dredging Co.*, 92 Maine, 454; *Ferren* v. *Old Col. R. R.*, 143 Mass. 199; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400, 405; *Leary* v. *Boston & Albany R. R.*, 139 Mass. p. 584; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 398; Wharton, Negligence, §§ 12 & 14, and cases cited.

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

EMERY, J. When this case was first before the law court, as reported in 92 Maine, 454, we declared that the finding of the jury upon the question of the defendant's liability for the death of the plaintiff's intestate was not made to appear so unmistakably wrong

as to require us to set it aside.    We did set the verdict aside, how-
ever, because of the excessive damages assessed by the jury.

A  second  jury  has  assessed  the  damages  at  nearly  the  same
sum  that  was  assessed  by  the  first  jury,  although  the  evidence
upon  the  question  of  damages  at  the  second  trial  did  not  prepond-
erate  any  more  for  the  plaintiff.    We  think  this  question  must
have  been  more  or  less  obscured  by  the  smoke  of  the  battle  over
the  question  of  liability  which  the  defendant  again  raised;  and
that  the  jury  thus  lost  sight  of  the  rules  governing  the  assessment
of  damages.

The  verdict  as  to  the  question  of  liability  should  stand,  and  judg-
ment  be  eventually  rendered  thereon  for  the  plaintiff.    The  assess-
ment  of  damages,  however,  must  be  set  aside  and  damages  be
assessed  anew  by  a  jury  unaffected  with  any  contention  over  the
question  of  liability.    This  the  court  has  the  power  to  do.    *Boyd*
v. *Brown,* 17  Pick. 453 ; *Kent* v. *Whitney,* 9  Allen, 62 ; *Negus* v.
*Simpson,* 99  Mass.  388.

> *The  assessment  of  damages  set  aside  and  a  new  trial*
> *ordered for the assessment of damages only.*