GORDON L. HESSELTINE PRO AMI

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Penobscot.    Opinion April 17, 1931.

*Fellows & Fellows,*
*Percy E. Higgins,* for plaintiff.
*Perkins & Weeks,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

BARNES, J.   Plaintiff sues to recover damages for injuries re-
ceived on the grade crossing in Pittsfield village, where at 4.52 in
the morning of April 22, 1930, a Dodge truck driven southerly by
his father collided with the head engine of defendant's freight train
moving over the main highway, the main street of the village.
Plaintiff sat at the right of the driver in the cab of the truck, and
the evidence shows the truck hit the framework of the locomotive
just back of the pilot or cow-catcher.

The father, a resident of Oldtown, Me., was driving the first of
two trucks loaded with merchandise, from Oldtown toward Port-
land, the second truck following closely in his rear. Plaintiff was
then sixteen years eleven months old, an intelligent lad, in his senior
year in high school, and accompanying his father at the latter's re-
quest, so far as the evidence shows, an invited guest. Defendant's
railway marks the southerly edge of the business section of the vil-
lage, the highway below running through a residential section and
thence into open country.

Plaintiff had never before ridden through the business section of
the village and knew nothing of the crossing which he was ap-
proaching.

The crossing is double tracked, the southerly track used by east-
bound trains. For 800 feet and more, northerly of the crossing, the
business blocks of the village stand close upon either side of the
highway, except that on the easterly side the buildings end in the
Lancey House, a hotel, several rods north of the railroad track,

and the southeasterly corner of the most southerly building on the westerly side, the Connor block, is about 110 feet from the middle line of the east-bound crossing.

The mouth of a street and the entrance to the yard of defendant's passenger station occupy the space between the Connor block and the railroad tracks, and in the intersection of this side street and the main highway a traffic signal, so-called, a concrete structure about eight feet high, topped by a light flashing at short intervals, was standing, about fifty-three feet from the northerly rail of the east-bound track. The easterly end of the station building is probably more than 250 feet from the point of collision.

The crossing is equipped with gates, but at the time of the accident, in conformity with the ruling of the Public Utilities Commission, the gates were operated only between the hours of six o'clock in the morning and midnight. Pittsfield's streets were brightly lighted as the truck traversed them, and plaintiff testified that it's speed was about fifteen miles per hour, slowed down to four or five miles per hour as it passed the Connor block.

The street here, and over the crossing, is practically level and at right angles to the railroad tracks. Plaintiff testified that when about opposite the Connor block his father said that the crossing before them "was a darned bad crossing." Somewhere between the Connor block and the traffic signal the father shifted gears of his motor, and plaintiff testified that he himself looked to the right, the direction from which an east-bound train would come, and saw nothing that would indicate the approach of a train, and heard no sound. The window on his side of the truck cab was half opened, that on the driver's side completely opened. He testified that after passing the traffic signal both he and his father looked to the left as they continued rolling along, seeing or hearing nothing of a train; then as plaintiff turned to look straight ahead the collision occurred.

The father was killed and plaintiff lost his right hand and the lower part of his arm, and suffered other injuries.

The train with which he was in collision was a regular freight, running from plaintiff's right toward Bangor, on the east-bound track. It was hauled by two engines and consisted of seventy loaded and seven light cars.

Plaintiff recovered a verdict and defendant filed a motion for a new trial.

Plaintiff pleaded, and the evidence must satisfy this court, that during his passage from a point opposite the Connor block to the point of collision he was exercising due care, or a verdict in his favor can not be sustained.

That is to say, the evidence must satisfy the jury, dispassionate observers at the trial, that the plaintiff did what a boy of his age, exercising the degree of prudence and caution required of a boy of that age, would do under like conditions; that he did not fail to act as the reasonably prudent and cautious boy of his age would have acted in like situation, or their verdict will be against the law.

Certain principles that shall govern the conduct of a traveller on the highway as he approaches an area where a railroad crosses or is crossed by a highway are and have been for years settled in this state.

Some of them are as follows. It is the duty of the traveller to wait for the train. The train has the preference and the right of way. *Smith* v. *Maine Central Railroad Company*, 87 Me., 339, 347.

A collision at a railroad crossing is *prima facie* evidence of negligence on the part of the traveller. *Hooper* v. *B. & M. R. R.*, 81 Me., 260, 267.

"One in the full possession of his faculties who undertakes to cross a railroad track at the very moment a train of cars is passing, or when a train is so near that he is not only liable to be, but in fact is struck by it, is *prima facie* guilty of negligence, and in the absence of a satisfactory excuse, his negligence must be regarded as established." *State* v. *Maine Central Railroad*, 76 Me., 358.

The obvious peril of collision at grade crossings of railroads with common roads requires "that the traveller upon the common road, when approaching a railroad crossing, should exercise a degree of care commensurate with the peril. He should bear in mind that he is approaching a railroad crossing and that a train or locomotive may also at the same time be approaching the same crossing at great speed.

"He should never assume that the railroad track or crossing is clear. He should apprehend the danger, and use every reasonable precaution to ascertain surely whether a train or locomotive is

near. He should, when near or at the crossing, look and listen, not simply with physical eyes and ears but with alert and intent mind, that he may actually see or hear if a train or locomotive be approaching.

"He should not venture upon the track or crossing until it is made reasonably plain that he can go over without risk of collision." *Giberson* v. *B & A. R. Co.*, 89 Me., 337, 343.

"If the plaintiff did not listen with ear and mind both he was negligent." *McCarthy* v. *B. & A. R. Co.*, 112 Me., 1.

The traveller upon the highway, in approaching a railroad crossing at grade, must, "to comply with his duty to exercise ordinary care, be on the alert to ascertain by the use of his senses of sight and hearing, and by any other appropriate means, the approach of trains, and to seasonably avoid collision with them. . . . Care commensurate with the peril requires the traveller upon the highway to look and listen for trains at the very time he is approaching the crossing, and omission to take this ordinary precaution is, if unexplained, contributory negligence *per se*, as matter of law, and will bar an action for the collision even though the railroad was negligent in the premises." *Day* v. *B. & M. Railroad*, 96 Me., 207.

And ordinarily, when the traveller's view of the track is obstructed, "greater care is required in looking and listening, even to the extent, if driving, of alighting." *Blanchard* v. *Maine Central Railroad Co.*, 116 Me., 179.

Nothing in the history of the case at bar, or the conditions affecting plaintiff, presents "satisfactory excuse" for his failure to exercise the degree of care ordinarily required of a traveller in like situation. He was a guest of the driver of the truck in which he was riding. But it was his own body that was approaching a place of serious peril.

He was more than sixteen years old; if not more intelligent than the average boy of that age, he was at least of the intelligence commonly found in boys of his age, and we have held that the negligent conduct of a boy of twelve years approaching a railroad crossing, a gratuitous passenger, precluded recovery of damages. *Crosby* v. *Maine Central Railroad Co.*, 113 Me., 270.

The same defense prevailed in case of a boy fourteen years old. *McCarthy* v. *B. & A. R. Co.*, supra.

It is urged in argument that the station building of defendant obstructed plaintiff's vision, but testimony and exhibits convince us that at the distance of 110 feet from the east-bound track he had a line of vision in the direction whence the train was approaching for 260 feet, unobstructed save for a post some few inches thick, and this line continually lengthened as he approached the rails.

Plaintiff testified that at about 110 feet distance from the crossing his father had termed it a bad crossing; that he looked to his right then, but that while riding about the latter half of the distance he looked the other way.

That the gates were open is proffered as an excuse for lack of vigilance. But we have stated the rule to be "while the fact of open gates is a circumstance which a traveller may properly take into consideration, and upon which he may place some reliance, this does not relieve him of all care." *Blanchard* v. *Maine Central Railroad Co.*, supra.

As we study the record we conclude that plaintiff's negligence and want of care contributed to the occurrence of the collision; the verdict is against the law and the entry must be,

*Motion granted.*