RALPH PLANTE

*vs.*

CANADIAN NATIONAL RAILWAYS AND EDGAR ST. LAURENT.

Androscoggin.   Opinion, January 3, 1942.

216

*Berman & Berman,* of Lewiston, for plaintiff.

*Skelton & Mahon,* of Lewiston, for defendant, Edgar St. Laurent.

*Fred H. Lancaster,* of Lewiston, and

*H. P. Sweetser,* of Portland, for defendant, Canadian National Railways.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MURCHIE, J.   This case comes to the court on separate general motions for a new trial filed on behalf of both defendants following a verdict for the plaintiff for $600 against both defendants. There are no exceptions.

The material facts are not in dispute. From the evidence it definitely and clearly appears that the plaintiff, late at night in midwinter, was travelling as a passenger in an automobile, driven by the defendant St. Laurent, along a highway in the

City of Auburn, across which the defendant Canadian National Railways maintained a crossing at grade; that, within a few minutes prior to the time when the automobile reached the crossing, a special freight train, operating on a fixed daily schedule and approximately on time, was stopped there for the purpose of cutting out three freight cars and placing the same upon a siding; that the train was a relatively long one and extended more than seven hundred feet along the track both north and south of the highway; and that a refrigerator car about forty feet long and nine feet high, painted yellow with black lettering, extended across and completely blocked the highway. The night was clear but dark, and the road surface somewhat slippery. The plaintiff was not familiar with the crossing.

The evidence does not clearly establish how long the train had been stationary, or the condition of the paint on the refrigerator car, but it is entirely clear that the time interval was greater than that period of five minutes which the plaintiff claims to be controlling, and the jury would have been fully justified in finding that the particular car had not been freshly painted but presented that dingy, neutral appearance which is often noticeable in railway equipment.

The defendant St. Laurent was proceeding at a rate of speed variously estimated at from twenty miles per hour (or slightly under) to thirty. Called as a witness by the plaintiff, he estimated his own speed at "around twenty-five miles an hour." His automobile was in good condition, as were the lights. All persons riding in the car testified for the plaintiff, but no one, other than the defendant St. Laurent, saw the obstruction prior to the impact. He testified that he first saw it when within forty or fifty feet, but was unable to bring his car to a stop because of hard-packed snow and ice on the road surface.

The claim against the defendant St. Laurent is asserted on the ground that he neglected duties (1) to drive at a reasonable rate of speed, and (2) to keep reasonable watch for ob-

structing trains, with the vehicle under such control that it could be seasonably brought to a stop, and that against the defendant railway is based upon the breach of duties (1) to refrain from unreasonably obstructing the highway, and (2) to give warning, in case of obstruction, to highway traffic. The defendant St. Laurent, in his pleadings, asserts that the night was "dark, cloudy and stormy," but there is no support in the evidence for anything beyond the element of darkness. On the contrary, undisputed testimony shows that the night was clear and the visibility good.

The jury verdict imports findings of fact that the defendant St. Laurent and an employee of the defendant Canadian National Railways were severally guilty of acts of negligence; that their separate negligent acts contributed proximately to cause the injuries; and that the plaintiff was in the exercise of due care.

There is no sound basis for contesting the dual findings as to the negligence of the defendant St. Laurent and its causal connection with the accident. Collision at a railroad crossing constitutes prima facie evidence of negligence on the part of a traveler struck on the crossing by an approaching train, or running into the side of a train standing upon, or moving across one. *Heseltine* v. *Maine Central Railroad Co.*, 130 Me., 196, 154 A., 264; *Witherly* v. *The Bangor and Aroostook Railroad Co.*, 131 Me., 4, 158 A., 362. Whether excessive speed or failure to watch was the basis of the verdict, there was no evidence to refute the prima facie case against him, and it is entirely obvious that it was either the sole, or a substantial, proximate cause of the damage.

The same thing is true with reference to the finding as to due care on the part of the plaintiff since, as already noted, he was not familiar with the crossing and the facts do not indicate a degree of negligence on the part of the driver which should have charged him with responsibility to give warning or take any other action. Our court long since decided that the negligence of a driver could not be imputed to his passenger. *State*

*of Maine* v. *Boston and Maine Railroad Co.,* 80 Me., 430, 15 A., 36.

This leaves for determination the question of negligence on the part of the defendant railway and its causal connection with the injuries. Decision must be made within the established principles that a jury verdict should not be set aside unless it is "clearly and unmistakably wrong"; *McNerney* v. *Inhabitants of East Livermore,* 83 Me., 449, 22 A., 372, 373; *Searles* v. *Ross, et al.,* 134 Me., 77, 181 A., 820; *Marr* v. *Hicks,* 136 Me., 33, 1 A., 2d, 271; and that, in the absence of exceptions, it must be assumed that the findings were made after proper instruction upon the applicable law. *Frye* v. *Kenney,* 136 Me., 112, 3 A., 2d, 433. The finding of negligence may have been based on either the maintenance of an obstruction contrary to the regulation imposed by R. S. 1930, Chap. 64, Sec. 79, that railroads shall not "unreasonably and negligently" obstruct highway crossings, or the rule enunciated in *Richard* v. *Maine Central Railroad Co.,* 132 Me., 197, 168 A., 811, 812, that a stationary unlighted freight train upon a crossing at night creates "a hazard for travellers" which may impose a duty to warn.

As to the first ground, it is apparent from the record that the sole question is whether the train constituted an obstruction within the rule that violation of a regulation imposed by law creates a presumption of negligence. *Nadeau* v. *Perkins,* 135 Me., 215, 193 A., 877. There is no suggestion in the testimony of any unreasonable and negligent obstruction *in fact.* On the contrary, the evidence is undisputed that the train crew proceeded expeditiously to cut out the cars and place them upon the siding, and the plaintiff offers no authority for the claim, obviously implied in his examination of the conductor of the train, that the defendant railway could have conducted its transportation by stopping where no cars would have been left standing on the highway or by breaking the train at a second point to leave the crossing free. Paraphrasing

an earlier declaration of this court, the public benefit of rail transportation, "viz., quickness and economy" in handling freight, "would be greatly lessened" by the delay and expense involved in either such method. "The traveler upon the common road is not seriously inconvenienced by the railroad crossings." *Giberson* v. *Bangor & Aroostook Railroad Co.*, 89 Me., 337, 36 A., 400, 401.

Plaintiff's reliance on this point rests squarely upon the claim that the obstruction was negligent *in law* because the train had been standing on the crossing for more than five minutes. The statute fixes no time interval which if exceeded will represent an unreasonable and negligent obstruction. There has been no judicial determination upon the point. The claim is that a rule of the defendant, adopted for the government of its employees, which reads that a "highway must not be obstructed by switching operations for more than five minutes at a time," has measured off a five-minute interval as that obstruction which is inhibited by statute. For this extension of the principle declared in *Nadeau* v. *Perkins,* supra, the plaintiff offers as authority two cases decided in other jurisdictions and comment thereon in Wigmore's Evidence. The cases, *Chicago & A. Ry. Co.* v. *Eaton,* 194 Ill., 441, 62 N. E., 784, 88 Am. St. Rep., 161, and *Stevens* v. *Boston Elevated Railway,* 184 Mass., 476, 69 N. E., 338, support the principle that violation of a rule adopted in the interest of safety for third persons may be considered evidence of negligence, but there is nothing in the instant case to justify belief that the particular rule was adopted to serve any such purpose. It seems apparent that the rule proved was adopted to forestall the imposition of penalties under the statute. In *State of Maine* v. *Grand Trunk Railway of Canada,* 59 Me., 189, the only decided case which furnishes a direct interpretation of the legislation on the particular point, an indictment was held sufficient on allegation that, because of an unreasonable and negligent obstruction,

"people . . . could not . . . go and return, pass and repass
. . . along said highway, as they ought and were accus-
tomed so to do, to the great damage and common nuis-
ance"

of all citizens. The rule was clearly violated but the verdict
must be held clearly and manifestly wrong if it was based upon
a finding that the defendant's rule furnished statute interpre-
tation that anything in excess of a five-minute delay would be
a violation of law.

The alternative of basing liability on a failure to warn high-
way traffic requires consideration of the applicable law. The
proper test as to the necessity for warning, when a highway
crossing is obstructed by an unlighted train at night, is whether
the railway employees, in the exercise of proper care, should
recognize danger of collision with a highway vehicle operated
by a man of ordinary prudence. This rule has often been de-
clared. *Gilman* v. *Central Vermont Ry. Co.*, 93 Vt., 340, 107
A., 122, 16 A. L. R., 1102; *Philadelphia & Reading Ry. Co.* v.
*Dillon*, (Del.), 114 A., 62, 15 A. L. R., 894; *St. Louis-San Fran-
cisco Ry. Co.* v. *Guthrie*, 216 Ala., 613, 114 So., 215, 56 A. L. R.,
1110; *Trask* v. *Boston and Maine Railroad*, 219 Mass., 410,
106 N. E., 1022. In the two latter cases no violation of a statute
was involved, but the cases can hardly be distinguished on that
ground since the violation here relied on is not of a statutory
regulation but merely of a rule which cannot be said to have
been adopted to protect against crossing accidents. In *Richard*
v. *Maine Central Railroad Co.*, supra, there was a heavy fog
and visibility was poor. The decision in that case is authority
for holding that failure to warn of an obstruction, when fog or
some other equivalent circumstance obscures vision, may
serve as the foundation of liability. It cannot be said to go
further. Evidence by way of a plan and photographs shows
that but for the darkness, the crossing would have been visible
from a distance of upwards of three hundred feet. Statute re-
quirement (R. S. 1930, Chap. 29, Sec. 82) is that such a motor

vehicle as that in which plaintiff was riding should be equipped with headlights

"capable of furnishing light . . . to render any substantial object clearly discernible . . . two hundred feet directly ahead."

As to grade crossings, the statute further provides (Section 89 of the same chapter) for a further safeguard by way of reduced speed when a motor vehicle approaches within "one hundred feet from the nearest rail" of a crossing. Obviously there was no danger that a motor vehicle driven at proper speed, or under proper control, would run into the side of this train under the conditions prevailing, and the verdict, as to the defendant railway, must be set aside as manifestly wrong on the issue of negligence.

If a finding of negligence on the facts was proper, the same result would be inevitable since it is apparent, even with negligence assumed, that the case must fail on causation. Questions on either of these issues are generally considered as of fact rather than of law, *State of Maine* v. *Maine Central Railroad Co.*, 76 Me., 357, 49 Am. Rep., 622; *York* v. *Maine Central Railroad Co.*, 84 Me., 117, 24 A., 790, 18 L. R. A., 60; *Romeo* v. *Boston and Maine Railroad*, 87 Me., 540, 33 A., 24; *Maine Water Co.* v. *Knickerbocker Steam Towage Co.*, 99 Me., 473, 59 A., 953; but this is limited by the rules declared in *York* v. *Maine Central Railroad Co.*, supra, that:

"the act . . . may be so plainly and indisputably negligent *or otherwise*, that there can be no need to ask for the judgment of the jury upon the question" (italics ours),

and in *State of Maine* v. *Maine Central Railroad Co.*, supra, that a verdict based upon negligence is wrong if "the relation of cause and effect" between the negligent act and the accident is wanting. Plaintiff's injuries were caused by an automobile, the vision of the operator unobscured, being driven against the

side of a train which should have been seen in ample time to stop the vehicle before impact. The fact that the train had been standing upon the crossing for more than five minutes had no causal connection with the event.

This court has not heretofore had occasion to decide what action on its part is appropriate when a verdict against two alleged joint tort-feasors, entirely correct as to one and obviously erroneous as to the other, is brought before it on separate motions for new trial. Clearly under such circumstances it cannot be permitted to stand in its entirety since that would be palpably unjust to the defendant against whom no basis for liability had been established in the trial of the cause, and it would be equally unjust to the plaintiff to set it aside as against him whose negligence had been determined properly by the duly constituted fact finding body which passed upon the evidence.

In the technical procedure of the early common law, it was undoubtedly an established principle that a joint verdict must stand or fall in its entirety. 20 R. C. L., 224, Par. 9. There seems to be no occasion for multiplying authorities but it may be noted that the reason for, and lack of logic in, the rule, and the authorities on the subject, were quite thoroughly discussed by Chief Justice Shaw in *Bicknell* v. *Dorion, et al.,* 16 Pick., 478. Bacon's Abridgement, Tidd's Practice, Dunlap's Practice and other authorities, including an earlier Massachusetts case, *Sawyer* v. *Merrill,* 10 Pick., 16, all to the same effect and against the "splitting" of a verdict, are there cited and considered, and the rule of entirety rejected in recognition that the practice of granting new trials was founded "upon the broadest and most liberal principles of justice" and should be exercised in a manner "as unrestrained as possible." In the particular case, the process had named five defendants; the plaintiff had discontinued as to one, and on the trial of the remaining four, a verdict had been found in favor of two and against the other two. The latter prosecuted the case upon motions for a new

trial and in arrest of judgment. A new trial was ordered upon
issues having no relation to the problem which now confronts
us, but the court made it amply plain that the common law
rule that a joint verdict could not be set aside as to a part of
the defendants and permitted to stand against the others
would not thereafter be recognized in the Commonwealth.

The Bicknell case, supra, does not quite reach the issue in-
volved in the instant one. That case, like our own recent *Arnst*
v. *Estes, et al.*, 136 Me., 272, 8 A., 2d, 201, presented only the
issue as to whether a plaintiff might have a valid judgment on
a verdict against part only of the defendants named in the
process in which it was obtained. In the Massachusetts case,
one named defendant was cleared by voluntary discontinuance
of the plaintiff and two by the jurors who found liability only
against a part of the group submitted on the case for their de-
termination. In the Arnst case, the division was made, not by
the plaintiff himself or by the jury hearing the cause, but by
the justice presiding in the trial court who ordered a non-
suit as to one defendant and submitted the issue as to the
liability of the single defendant remaining to the determina-
tion of the jury. Our late Chief Justice Dunn in the Arnst case
analysed quite fully the nature of the liability of parties whose
alleged acts of negligence are claimed to have contributed to
produce an indivisible injury and the case recognizes that such
liability is both joint and several. It seems unnecessary to re-
view the general proposition again at this time. That case
stands as authority for the rule that one joint-defendant can-
not complain because another, sued with him, has been prop-
erly found not liable on the facts in the trial below. To this ex-
tent this court broke away from the full operation of the com-
mon law rule as far back as 1858 (or at least indicated its
tendency so to do), when, in *Gillerson* v. *Small*, 45 Me., 17, in-
struction to a jury that it might find against one or more of the
named defendants, according to the evidence, was held correct.

It is established law in this state that process sounding in

tort and instituted against plural defendants does not of necessity have to remain such during its full course if the liability upon which the action purports to be grounded is several. That a jury may separate the defendants and return a verdict which will exonerate one or more and find against another or others was recognized in approving the instruction given in the *Gillerson* case (although the jury then found against all the defendants named). The court may likewise separate them by ordering a non-suit as to one (or more). *Arnst* v. *Estes, et al.,* supra. It is stated in that case that a named co-defendant cannot complain because another named with him has been cleared of liability by "nonsuit, discontinuance or favorable verdict." This is in accordance with the practice as to judgments as stated in Vol. 11 of Encyclopaedia of Pleading and Practice, page 852, that

> "In an action of tort against several defendants the plaintiff may recover against so many of the defendants as the proof shows were guilty of the wrong, but the proof failing as to any of the defendants, those against whom there is no evidence are entitled to a verdict."

The mere statement of these principles seems to be a complete answer to the present problem. It is recognized that this court may approve action in the trial court which has converted a suit against more than one defendant, based on a claim of joint and several liability, into one where a verdict may properly be rendered against a single one on his several liability. What it may approve in the courts operating subject to its review, it is certainly competent to direct on its own initiative. The present verdict, on the issue of liability, must be set aside as to the defendant Canadian National Railways and permitted to stand as against the defendant St. Laurent. This action is in line with the trend generally prevailing to liberalize practice and procedure so as to give maximum consideration to the merits of cases presented to appellate courts. 20 R. C. L.,

224, Par. 9; *Sparrow* v. *Bromage*, 83 Conn., 27, 74 A., 1070, 27 L. R. A. (N. S.), 209, and annotation thereto, 19 Ann. Cas., 796.

Notwithstanding the verdict as to the one defendant is proper on the question of liability, it seems apparent that it is improper in that the award of damages made by the jury is excessive and so palpably so that this court should interfere. Plaintiff's out-of-pocket cost was $51, for medical services. He suffered no loss of earnings, or disfigurement. By his own testimony his pain and suffering can only be measured by the endurance of "five stitches" taken in his scalp; "an awful headache" for a week, and pain when the wound was washed "with iodine." There is nothing to suggest such a degree of suffering as would justify compensation amounting to $549. The award is unmistakably excessive and cannot be permitted to stand. "It is the duty of the court to see that what should be regarded as the ultimate bounds are not greatly overstepped." *Ramsdell* v. *Grady*, 97 Me., 319, 54 A., 763, 765; *O'Brien* v. *J. G. White & Co.*, 105 Me., 308, 74 A., 721. That the amount is only $600 is not controlling but rather the fact that it is entirely disproportionate to the damages suffered.

Since the verdict is so large as to require action on the part of this court, it remains only to be seen whether an adjustment can properly be made by ordering a remittur or if the facts should again be submitted to the judgment of a jury. The practice of ordering a motion dismissed unless the plaintiff by voluntary action remits a part of his verdict is too well recognized to require the citation of authorities. In like manner, the practice has been established, where this court did not feel justified on the record in attempting to assess the damages itself, of directing a new trial for that purpose only. *McKay* v. *New England Dredging Co.*, 93 Me., 201, 44 A., 614. Such seems to be the appropriate procedure here since the court by examination of the cold record and without opportunity to judge upon the matter by viewing the plaintiff himself upon the stand and actually hearing the testimony of his witnesses

has no sound basis for determining what would be a proper award, and the mandate will be

> *On the motion of the defendant*
> *Canadian National Railways*
> > *Motion sustained.*
> > *Verdict set aside.*
> > *New trial granted.*
>
> *On the motion of the defendant*
> *Edgar St. Laurent*
> > *Motion sustained as to damages.*
> > *Verdict set aside.*
> > *New trial ordered for the assessment of damages only.*