No. 16,962.

WERNER ET AL. *v.* SCHRADER.

(258 P. [2d] 766)

Decided June 1, 1953.

Mr. LLOYD E. WILLIAMS, Mr. O. REX WELLS, for plaintiffs in error.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the court.

The parties herein appear in the same order as in the trial court, and we shall refer to them as plaintiffs or defendant, or by name.

This action involves a collision between a motorcycle driven by John D. Werner, age seventeen years, and an automobile driven by defendant. In the collision Werner suffered physical injuries. He brought suit to recover damages resulting therefrom, alleging negligence on the part of Schrader. John H. Werner, father of John D. Werner, also joined as a plaintiff, claimed damages for the loss of the motorcycle, which was his property; for medical and other expenses paid by him for his minor son, and for loss of the son's services during his disability. Defendant answered, denying any negligence on his part, and pleading contributory negligence on the part of John D. Werner. Plaintiffs in their reply to the plea of contributory negligence alleged that defendant had the last clear chance to avoid the accident.

At 1:30 P. M. on August 7, 1950 at the intersection of Magnolia street and Mathews street in Fort Collins, Colorado, a collision between plaintiff's motorcycle and defendant's auto occurred. Each thoroughfare is sixty feet wide. Defendant was driving north on Mathews street and plaintiff was proceeding east on Magnolia street. The day was clear and bright. The only witnesses to the accident were plaintiff and defendant. The latter, called as an adverse witness on behalf of plaintiffs, testified that the head of his car was just over the center line of Magnolia street when plaintiff's motorcycle crashed into the front left fender of his automobile. He testified that prior to approaching the intersection he was traveling at approximately 28 miles per hour, but that he was stopped when the accident oc-

curred. He estimated the speed of the motorcycle at 40 to 50 miles per hour. In narrating the events, the record discloses the following questions directed to, and answers given by, young Mr. Werner: "Q. All right, just tell it in your own words then, as to what happened, Johnnie. A. Well, I turned off of College Street, and then I looked at the speedometer and it said right around fifteen miles an hour, and then I went down the street and I saw a fellow that is working at the Church there, and I waved to him and then I kept on going, and I came into this intersection, and I looked to the right, and like I said, I saw that car down there that was parked by the drive-way, and then I looked to the left and didn't see anything, and then I started, like that, and just turned my head like that, and just like that I heard that smash and I was flying through the air, and I hit on the pavement, and that's about all there was."

Again, on redirect examination, Mr. Werner testified as follows: "Q. Now Johnnie you testified that you came down Magnolia Street, and did you say that you looked to the right as you approached this intersection? A. Yes, sir. Q. And then what did you do? A. Then I looked to the left. Q. And then what happened after that? A. That is when I heard that crash. Q. Well now at the time as you were approaching the intersection or at any time before the actual impact, did you at any time see the defendant's car? A. No, sir, I looked to the right and I didn't see any car, except that parked car that I told you about. Q. And how far to the right did you state you had looked? A. About down to the alley. Q. About down to the alley marked on plaintiffs' Exhibit A? A. Yes, sir."

Again, plaintiff testified as follows: "Q. And that's the one and only time you ever looked to your right—isn't it? A. Yes."

\* \* \*

"Q. When you looked at that time, if you had seen a car in that space there, you could have stopped before

reaching the center of Mathews Street, couldn't you? A. Yes, I could have. Q. And have let that car go on by you, couldn't you? A. Yes, I could. Q. You knew the right of way rules in Fort Collins, at that time, didn't you? A. I believe so. Q. You knew the car to the right, had the right of way, didn't you? A. Yes, more or less. Q. Then as I understand you, you kept right on, and looked to your left and saw nothing to your left? A. Yes, sir. Q. And the next you knew, was the crash? A. Yes, I looked to the left, like that, (indicating) and just turned my head back, and that is just when it happened. Q. And you at no time saw the defendant's automobile? A. No, sir. I haven't seen it to this day."

\* \* \*

"Q. You didn't know what you had collided with, at the time, did you? A. No, sir, I did not know what had happened."

Defendant testified: "By that time, (moment of impact), as I remember, I was stopped, and he just hit my front wheels \* \* \* "

Other witnesses appeared on behalf of plaintiff, but none saw the accident. One witness, John Coy, testified that he observed defendant's automobile after the impact and that the left front fender was bent back and slightly to the right.

A photograph of defendant's car taken after the accident was introduced in evidence and this exhibit indicates that the left front fender was buckled and pushed toward the right side of the car.

At the conclusion of plaintiff's case, defendant moved for a directed verdict in his favor, which motion was granted. Pursuant to this ruling, judgment of dismissal of the action was entered, and plaintiff brings the case here by writ of error.

Specifications for reversal are: (1) That the trial court erred in directing a verdict for defendant; (2) that the trial court erred in finding plaintiff guilty of contributory negligence as a matter of law; and (3) that the trial

court erred in refusing to submit the case to the jury on the doctrine of last clear chance.

Our Court has repeatedly held that, for a person to look in such a manner as not to see what must plainly be visible, is of no more effect than if he does not look at all. We said in *Fabling v. Jones*, 108 Colo. 144, 114 P. (2d) 1100: "To have looked in such a manner as to fail to see what must have been plainly visible was to look without a reasonable degree of care and is of no more effect than if she had not looked at all." See, also, *Brickey v. Herring*, 96 Colo. 181, 41 P. (2d) 298; *Aaron v. Wesebaum*, 114 Colo. 61, 162 P. (2d) 232.

The failure of a driver to maintain a proper lookout and to see what he could and should have seen on approaching or traversing a street intersection, may constitute negligence as a matter of law.

Was young Mr. Werner contributorily negligent? Under the record in this case his negligence in failing to see defendant's automobile and to yield to it the right-of-way constituted contributory negligence sufficient to bar a recovery as a matter of law, unless a last clear chance on the part of defendant to avoid the collision was established by the evidence.

To make the last clear chance doctrine applicable, it must be established, independent of the doctrine itself, that the defendant after the peril of the injured party arose, was chargeable with negligence constituting a proximate cause of the injury. In the instant case there was no evidence to show a failure on the part of defendant to exercise ordinary care, either before, or at the time of, the accident.

The doctrine of last clear chance presupposes a perilous situation created or existing through the negligence of both plaintiff and defendant, but it is assumed that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avert the accident.

Many cases declare broadly and without qualification

that continuing and concurring negligence on the part of the injured person, or as it is sometimes expressed, contemporaneous negligence by both parties until the moment of the accident, prevents application of the last clear chance doctrine.

The last clear chance rule is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff. The burden is upon plaintiff to prove that he was in a place of danger; that defendant discovered the perilous situation; and that after discovery of plaintiff's danger, defendant could then have prevented the injury by the use of reasonable care.

In *Dwinelle v. Union Pacific Railroad Company,* 104 Colo. 545, 92 P. (2d) 741, our court used the following language which is quite pertinent under the facts of the instant case: "The doctrine of last clear chance applies only where plaintiff's negligence is admitted, and he has the burden of proving it as of any other fact. The most that can be said here on the point is that the evidence discloses a mere possibility that Finn might have avoided the collision, and that possibility rests upon split seconds. This is not enough to meet the rule. It may present a last, but not a clear, chance.

In the present action we have a case where, at the intersection of two thoroughfares, each sixty feet wide with nothing intervening to obstruct the view, the Werner motorcycle was driven into the intersection without its operator seeing what was undoubtedly patent, to wit: the approach of defendant's automobile. Being confronted with the right-of-way rule under the ordinance, plaintiffs seek redress upon the theory of last clear chance doctrine. Plaintiffs introduced no evidence even remotely tending to show that defendant had a last clear chance to avoid the collision.

Our review of the fact situation here involved clearly shows that the present case is not within the last clear chance rule as it has been applied in this jurisdiction. The trial court was correct in holding that

under no theory of the case as made by plaintiffs' evidence were they entitled to recover. Had the case been submitted to the jury and a verdict returned in favor of plaintiffs, such a verdict would not be permitted to stand because it would be without support in the evidence. In this case, the facts are such that reasonable men can draw but one inference from them. It became a matter of law for the court. Disputed facts as applied to this case, mean disputes in the evidence, not in the briefs. *Neal v. Wilson County Bank,* 83 Colo. 118, 263 Pac. 18.

Here, young Mr. Werner was unable to say what actually did happen, and the evidence elicited from defendant as an adverse witness for plaintiffs did not disclose any negligence on the part of defendant, or that he was remiss in any manner. Hence, there was no dispute in the evidence, and the trial court acted correctly in taking the case from the jury.

The judgment is affirmed.

MR. JUSTICE BRADFIELD not participating.