**James QUINN**

v.

**Robert E. MOORE, d/b/a Robert E. Moore Co., et al.**

Supreme Judicial Court of Maine.

July 13, 1972.

Mahoney, Desmond, Robinson & Mahoney by Lawrence P. Mahoney, Jack L. Schwartz, Portland, for plaintiff.

Preti & Flaherty by John J. Flaherty, and Thomas A. Cox, Portland, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

Dawson, Johnson & Kibler, Inc. was the general contractor under a written agreement of February 16, 1961 with the Canal National Bank of Portland, Maine, to erect for the Bank a branch bank office building at 383–389 Forest Avenue, in Portland. The general contractor, by the terms of the contract, was responsible for the general management of the building operation and had full directing authority over the execution of the subcontracts. The defendant Moore was a subcontractor whose duty it was to install flooring lath upon which the general contractor agreed to pour the cement floor. On April 10, 1961 the plaintiff, James Quinn, while employed by the general contractor in the pouring and spreading of wet concrete, crashed through the metal lath which Moore had installed and fell from the first floor level to the cellar, sustaining serious personal injuries for which the jury rendered a verdict in his favor in the amount of fifteen thousand five hundred ($15,500.00) dollars.

Moore appeals to this Court for relief on the ground that the Justice below erred in denying his motions for a directed verdict both at the close of the plaintiff's case in chief and at the close of all the evidence as well as in his denial of the plaintiff's mo-

tion for judgment notwithstanding the verdict and for a new trial. Rules 50 and 59, M.R.C.P. Furthermore, during the course of the trial the defendant's counsel moved for mistrial on the basis of a prejudicial statement made by the plaintiff's counsel before the jury. The motion was denied and this denial is also included in the points on appeal.

■ For purposes of this appeal we must afford the plaintiff the most favorable view of the facts and of every justifiable inference to be drawn from them, whether the appeal is based on the failure to grant a motion for a directed verdict (Andreu, Dostie v. Wellman, 1949, 144 Me. 36, 63 A.2d 926), or the appeal is grounded on the denial of a motion for judgment notwithstanding the verdict or for a new trial (Ogden v. Libby, 1963, 159 Me. 485, 195 A.2d 414; Scammon v. City of Saco, 1968, Me., 247 A.2d 108).

Viewed in the light most favorable to the finding of the jury, the evidence properly supports the following summary:

In the erection of the branch bank building within which the plaintiff was working at the time of his accident, it is undisputed that the defendant's employees were installing the metal lath flooring while the general contractor's men were performing other construction work. Their respective operations were integrated. The laying of the metal lath flooring had to be, and was, done prior to the pouring of the concrete floors. As a matter of fact, defendant's subcontractual metal lath flooring job had been completed about one week prior to the time the general contractor was ready to start pouring the concrete over the mesh floor installed by the defendant's men to receive it. On the day of his injury, the plaintiff and his co-workers had completed the "first pour" of concrete in a certain area of the building and this "first pour" covered the lath flooring to such an extent that it became impossible to know, when stepping in that area, whether one would be treading over the center of a lath or on a bar joist over which the lath flooring was installed. The plaintiff's duties at the time consisted of shoveling wet concrete from the high spots to the low spots to facilitate the work of the men who smoothed the concrete with a straight edge. The second pouring of concrete was done while the "first pour" was stiff but not completely dry. In attempting to fetch a shovelful of concrete to fill in a low spot, Quinn took a few steps back and fell through the wet concrete and metal lathing to the floor below, sustaining bodily injuries for which he was hospitalized twenty-eight (28) days and out of work for seven (7) months.

■ The defendant himself conceded, and this is overwhelmingly supported by other witnesses, that there is an accepted method to be used in installing the reference wire mesh flooring to receive wet concrete. The safe and sound procedure is to tie around the ribs as opposed to tying between the ribs through the grate, and the ends of strips should be overlapped one on the other at least twelve inches with double ties around the ribs. The jury justifiably could conclude that the defendant's lath flooring installation was not done in accordance with proper workmanship requirements.

■ The defendant, nevertheless, presses his claim of reversible error in the Court's denial of his motions for a directed verdict, for judgment n. o. v. and for new trial, on the ground that at no time did he owe a duty of due care to the plaintiff. The defendant says that the work under his subcontract had been completed and he had no more control of the metal lath flooring which, as he contends, was never intended for use as a support for the general contractor's workmen whose duty it was to pour the cement floor. Negligence is gauged by the ability to anticipate. The jury was warranted in finding that the defendant, through his long experience in the construction field and in the installation of metal lath flooring to receive wet cement, knew or should have known that his men

were not the only ones to work on the project, that the cement pouring would soon follow the laying of the wire mesh and that he could reasonably anticipate that the workmen engaged in pouring the cement might of necessity or under the requirements of reasonable convenience in the course of their work step on the wire mesh and not necessarily over the bar joists when in the process of laying the "second pour." It was the defendant's duty to install the metal lath flooring with due regard for the natural and customary use by others whose subsequent work was directly and integrally connected with such preliminary installation. If reasonable care would have anticipated such use (and, in the instant case, the jury was justified from the evidence in so finding), then it was the duty of the defendant to use reasonable care to install the metal lath flooring according to safe and sound methods of installation.

The defendant cites Masciarelli v. Powell, 1968, 30 A.D.2d 342, 291 N.Y.S.2d 967, as supporting his claim of non-liability. There, the defendant subcontractor had not securely attached to supporting posts the guard rails which he had previously installed on the side of a concrete roadbed of a ramp, the purpose of the guard rails being to protect motor vehicles from going over the sides of the ramp. The plaintiff, an employee of the general contractor, at the time of his accident was on a ledge outside the ramp range, positioning a 50-foot long metal concrete form on the ledge to permit the pouring of the second and final layer of concrete. While thus working on the ledge, plaintiff, in an endeavor to pull himself up from a kneeling to a standing position, took hold of the end of a rail, which became disengaged from the post, and he fell from the ledge. It is apparent that, even though the work of the general contractor and the subcontractor may have been side by side, the work which the plaintiff was performing *had no connection whatever* with the installation of the guard rails. This is a clearly distinctive feature which distinguishes that case from the instant one.

■■ Some injury, in fact, should have been anticipated as a probable consequence of the defendant's negligent installation of the metal lath flooring, whether to the men pouring the cement floor or to other workers who happened to be on the floor below. The reasonable foreseeability of injury to others from one's acts or from one's failure to act raises a duty in law to proceed in the exercise of reasonable care. It is not necessary that the precise type of injury be foreseen nor the specific person injured. The orbit of danger may be undefined in terms of time, space or persons. Nevertheless, if a reasonably prudent and careful person should have anticipated under all the existing circumstances that a person in the situation of the plaintiff would probably be injured as a proximate result of the negligent conduct of the defendant, then such risk of injury reasonably to be apprehended raises the legal duty to proceed in the exercise of reasonable care commensurate with the danger of injury in order to avoid the same. See, Hersum v. Kennebec Water District, 1955, 151 Me. 256, 117 A.2d 334; Hatch v. Globe Laundry Co., 1934, 132 Me. 379, 171 A. 387.

■ The plaintiff's immediate supervisor testified that he had been told to be careful and to try not to step on the wire flooring. However, he stated that the concrete could not be poured without some stepping on the mesh. The defendant knew that, after a first layer of concrete was poured on the metal lath, it would be impossible for the cement finishers to ascertain where the wire mesh was in relation to the supportive bar joists. Furthermore, the plaintiff's immediate supervisor also testified that in his experience such metal lath flooring as the defendant had installed was capable of supporting the weight of a man of about 155 pounds if the installation is properly done. The jury could conclude, under all the evidence in

the case, that the defendant, with his years of experience in installing metal lath flooring, knew or should have known that those persons who were to use this wire mesh in connection with the pouring of the concrete floor were likely to step on it to some extent and, in doing so, would expose themselves to serious bodily injury if the mesh were not installed properly. The defendant owed the plaintiff, and those similarly situated, a duty to use such reasonable care in the installation of the wire mesh to protect against the risk of such injury.

■ The incident occurred before the effective date of our Comparative Negligence Statute, 14 M.R.S.A. § 156 (enacted in 1965, P.L. c. 424), and the plaintiff, therefore, in order to recover was not only required to prove negligence of the defendant which was a proximate cause of his injury but also his own freedom from any negligence which contributed to his injury.

■ The defendant contends, to avoid responsibility for the plaintiff's injuries, that the plaintiff was negligent as a matter of law. This was a question of fact resolved by the jury in favor of the plaintiff. There was no error. It is true that the manufacturer's specifications did provide that plank runways should be used to avoid puncturing the lath. The plaintiff conceded that he was told "not to walk on the wire mesh when you could see it." However, where the accident occurred during the second pouring of concrete when the plaintiff took a step back to shovel some concrete from a high spot to a low one, the jury could justifiably find that there was no disregard of his superior's instructions, since the mesh was not visible at the time and the job required him occasionally to step on the mesh.

■ In the course of his colloquy with the presiding Justice, the plaintiff's counsel in the presence of the jury referred to his trip in the morning to a similar construction site, stating that he had jumped on similar mesh and it did not break. This statement bore directly upon a material aspect of the case and was clearly unwarranted. Such misconduct on the part of experienced trial counsel cannot be viewed lightly and must be forcefully condemned as a tactic not becoming an attorney at law. However, the issue comes before us at the appellate level and the test to be applied is whether the trial Justice abused his discretion in not granting the motion for a mistrial. As we recently pointed out in St. Pierre v. Houde, 1970, Me., 269 A.2d 538, upon analogous misconduct of counsel, it becomes the duty of the presiding justice, in the exercise of a sound discretion, to determine the prejudicial effect of the offending statement and what corrective measures might be taken.

(At page 540) "The trial court may conclude that an appropriate instruction to the jury will or will not effectively remove the risk of prejudice. He is in a peculiarly advantageous position to gauge the impact of the offending language. He has heard the tone and inflection of counsel—he has seen the visible reaction of the jury, if any, as the words were spoken—in short, he has the benefit of sensory reactions which cannot be transmitted through printed pages to the reviewing court."

In the instant case, the trial Justice believed that he could cure any prejudice the offending statement might otherwise have had with the jury in the determination of the issues in the case by instructions to the jury immediately after the statement was made to be followed by further instructions on the subject in his charge. The presiding Justice was in a much better position to weigh the impact of the statement than a reviewing court and we cannot say that he abused his discretion. Absent any such showing, his ruling on the motion for a mistrial must stand. St. Pierre v. Houde, supra; State v. Norton, 1955, 151 Me. 178, 116 A.2d 635; Ritchie v. Perry, 1930, 129 Me. 440, 152 A. 621.

Although we wish to emphasize again that we disapprove without reservation whatsoever the misconduct of counsel for the plaintiff, nevertheless the presiding Justice in his charge did all in his power to prevent any prejudice resulting from counsel's improper statement. Having already rebuked him at the time the remarks were made, he clearly and forcefully instructed the jury that they were to disregard the remarks completely, erase them from their mind and under no circumstances give them any consideration at all. The jury must be presumed to have performed its duties correctly and followed the instructions of the court in reaching its verdict. Goldstein v. Sklar, 1966 Me., 216 A.2d 298; McCann v. Twitchell, 1917, 116 Me. 490, 494, 102 A. 740.

The entry will be

Appeal denied.

All Justices concurring.

WERNICK, J., did not sit.