Beverly Ann OLSEN and Craig A. Olsen

v.

Iona FRENCH.

Supreme Judicial Court of Maine.

Argued Nov. 10, 1982.

Decided Feb. 24, 1983.

Carl R. Wright (orally), Ted Susi, Skowhegan, for plaintiffs.

Wheeler, Arey & Millett, P.A., Clyde L. Wheeler (orally), Waterville, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The plaintiffs, Beverly Ann and Craig Olsen, appeal from a judgment entered in the Superior Court, Kennebec County, in favor of the defendant, Iona French, following an adverse jury verdict. They complain of reversible error at the trial level for rendering judgment in favor of the defendant, because 1) there was no evidence at trial warranting the jury to return a verdict for the defendant on the issue of negligence, 2) the defendant improperly introduced in the case evidence previously ruled inadmissible at pretrial hearing on motion in limine, and 3) the presiding jus-

tice erroneously refused to give the plaintiffs' requested instructions on excessive speed. We deny the appeal and affirm the judgment below.

### Facts

The evidence disclosed that, between 6:30 and 7:00 o'clock on the morning of January 20, 1976, the Olsens were on their way to work, the plaintiff husband doing the driving.[1] The weather was clear; the road surface, though sanded, was wet and showed patches of ice all along the way. The Olsens successfully descended the "forty-to-sixty-degree" downgrade of Water Street in Waterville, Mr. Olsen stopping his car close to the bottom of the hill to avoid striking the vehicle in front of him while that automobile was making a left turn. Mrs. French, the defendant, was not so fortunate. Traveling two car lengths behind the Olsen car at a speed of ten miles per hour, she also set out to stop, but her car skidded on ice in the road and struck the rear of the Olsen auto.

### Procedural background

The jury verdict for the defendant French was returned to the court on November 30, 1981. Entry of judgment on the jury verdict was made by the clerk of the court that same day, even though there was then pending and undisposed of a cross-claim by the defendant against the plaintiff, Craig Olsen. Notwithstanding the absence of a final judgment because of noncompliance with the provisions of Rule 54(b), M.R.Civ.P., the plaintiffs on December 8, 1981, filed a motion for a new trial pursuant to Rule 59(a), M.R.Civ.P., which motion, so far as the docket entries indicate, was never acted upon by the court and remains undisposed of on this record. On April 28, 1982, the plaintiffs filed their first notice of appeal to the Law Court. On May 4, 1982, the Law Court, noticing that the appeal was premature because of the absence of a final judgment, ordered a remand of the case to the Superior Court for

disposition of all pending claims or, in the alternative, for a determination by the presiding justice of the appropriateness of the entry on the docket of a Rule 54(b) order, the case to be restored to the Law Court docket upon compliance with the order of remand and the filing of a timely second notice of appeal. On May 25, 1982, the order of dismissal of the cross-claim dated May 24, 1982, was noted on the docket by the clerk. On May 28, 1982 the plaintiffs filed their second notice of appeal, which was immediately noted on the docket. It reads as follows:

Notice is hereby given that Beverly A. Olsen and Craig A. Olsen, Plaintiffs in the above captioned matter, hereby appeal to the Law Court from the Judgment entered in this action on November 30, 1981; said Judgment not becoming final until Defendant's cross-claim was dismissed pursuant to Order dated May 24, 1982.

We note that there was no reentry or renotation upon the docket of the original judgment entered prematurely upon the docket on November 30, 1981.

■ Although neither party has raised the question of jurisdiction, it is our duty to assure ourselves of, and examine, our own jurisdiction before deciding the merits of an appeal. The Law Court on its own initiative must take note of matters raising questions as to its own jurisdiction. *Coates v. Maine Employment Security Commission,* 428 A.2d 423, 425, n. 3 (Me.1981); *Brann v. State,* 424 A.2d 699, 702 (Me.1981); *Look v. State,* 267 A.2d 907, 908–09 (Me.1970).

The plaintiffs' second appeal in the instant case filed with the court on May 28, 1982 purported to be taken from the original judgment for the defendant entered on the court's docket on November 30, 1981, long after the time limits within which an appeal from judgment is permissible under the provisions of Rule 73(a), M.R.Civ.P., and if that November 30th notation upon the docket was effective to confer finality on

---

1. The couple was divorced in September, 1979.

that particular judgment, then the present appeal would be too late as the time periods for appeal are jurisdictional. *Remick v. Erin, Inc.,* 414 A.2d 896 (Me.1980). *See Town of South Berwick Planning Board v. Maineland, Inc.,* 409 A.2d 688, 689 (Me. 1980), and cases cited therein. *See also USM Corporation v. GKN Fasteners Ltd.,* 578 F.2d 21, 22 (1st Cir.1978).

■ But the clerk's notation of judgment on November 30, 1981, was premature and did not trigger the commencement of the running of the appeal period. Indeed, under Rule 58, M.R.Civ.P., it is the notation of a judgment in the civil docket in accordance with Rule 79(a) which constitutes the entry of the judgment and the rule expressly provides that *the judgment is not effective before such entry.* Rule 58 further states that "[u]nless the court otherwise directs *and subject to the provisions of Rule 54(b),* judgment upon the verdict of a jury shall be entered forthwith by the clerk." (Emphasis added). When the clerk on November 30, 1981, entered the reference judgment on the jury verdict, it is undisputed that there was a pending cross-claim upon which no action had been taken by the court. Section 54(b) provides:

> Except as otherwise provided in Rule 80(d) [not applicable], when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment* as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction any order or other form of decision, however designated, . . . . which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment

adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis supplied).

Hence, noncompliance with the requirements of Rule 54(b) left the judgment of November 30, 1981, notwithstanding its notation upon the docket, in an interlocutory status; its notation on the docket did not terminate the action as to any of the claims or parties, nor did it cause the time period for appeal to run, and, as the rule provides, the decision remained subject to revision or further trial court action in connection thereto at any time before the entry of the final judgment, *i.e.* one adjudicating all the claims and the rights and liabilities of all the parties.

■ A "first" appeal, taken originally in the absence of the determination and direction for the entry of judgment required by Rule 54(b), is abortive and must be dismissed, but the questions raised by a "first" appeal will be considered upon the merits, where a second appeal, as in the instant case, was timely taken from that initial judgment after it became a final judgment following the disposition of all pending claims. *See Seaboard Surety Company v. Dale Construction Co.,* 230 F.2d 625 (1st Cir.1956).

■ The clerk's failure on May 25, 1982, when the dismissal of the cross-claim was noted on the docket, to enter anew thereon at the same time a .notation of the initial judgment entered prematurely on November 30, 1981, did not cause the plaintiffs' second appeal also to be premature. The initial judgment still noted on the docket, together with the notation of the order of dismissal of the cross-claim, just as effectively terminated the litigation as would have been the case, had the clerk gone through the motions of making a new notation of the original judgment. Mindful of the admonition to construe the rules so as to secure the just, speedy and inexpensive determination of every action (Rule 1, M.R. C.P.), we will not exalt form over substance by requiring mere duplicative action on the part of the clerk. *Jetco Electronic Indus-*

tries, Inc. v. Gardiner, 473 F.2d 1228 (5th Cir.1973); Sepia Enterprises, Inc. v. City of Toledo, 462 F.2d 1315 (6th Cir.1972); Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).[2]

## Merits

### 1

### Verdict contrary to evidence

The plaintiffs initially argue that there was error below, because, as they view the evidence, they say the jury under no circumstances could return a verdict for the defendant on the issue of negligence. We disagree.

 First, we must decide whether that issue is open for review under the circumstances of this case. We noted previously that, unlike the defendant, the plaintiffs failed to file at trial a motion for a directed verdict at the close of all the evidence pursuant to Rule 50(a), M.R.Civ.P., nor did they move for judgment notwithstanding the jury verdict at any time under Rule 50(b), M.R.Civ.P. On the other hand, on December 8, 1981, they did make a motion for a new trial on the same grounds which they now advance on appeal. Thus, the new trial motion was filed prior to the time when the judgment of November 30, 1981 became final and efficient with the entry of the cross-claim dismissal order of May 25, 1982. The question is, was this then pending motion for a new trial available for court action after the initial judgment became final and prior to the taking of the second appeal. We answer in the affirmative. It is permissible under the rules to file a motion for a new trial before the actual judgment is entered or before the judgment, if prematurely entered, becomes a final appealable judgment. Boynton v. Adams, 331 A.2d 370, 373, n. 2 (Me. 1975). The language of Rule 59(b), M.R. Civ.P., requiring that "[a] motion for a new trial shall be served not later than 10 days after the entry of the judgment," does not mean that the motion must be served during the 10-day period following the entry of the judgment. Rather, it only denotes the outside limit within which the motion for a new trial can be made and not an inside limit. Cf. Gilbert v. Cliche, 379 A.2d 717, 719 (Me.1977). Thus, the motion for a new trial filed December 8, 1981, was pending and available for court action following the cross-claim dismissal order which impacted the defendant's previously interlocutory judgment with that degree of effectiveness and finality contemplated by rules 58 and 73.

 We note, however, that, instead of pressing their motion for a new trial, the plaintiffs filed their second appeal on May 28, 1982, claiming on appeal as one of their points of relief from judgment the identical point made in their motion for a new trial, that the evidence was wholly insufficient to support a verdict for the defendant. If the issue of the sufficiency of the evidence to support the defendant's jury verdict became reviewable on the mere taking of the appeal without an adverse ruling by the trial court on the motion for a new trial, then the taking of the appeal in the instant case must be deemed an election to go forward with the appeal and an abandonment of the motion for a new trial as such. See Torrey v. Full Gospel Church of Searsport, 394 A.2d 276, 279 (Me.1978). Cf. Herman v. Greene, 140 Me. 54, 55, 34 A.2d 17, 18 (Me. 1943).

**2.** Some courts have viewed as necessary the filing of a second notice of appeal, as exists in the instant case, following compliance when a previous notice of appeal was premature for noncompliance with Rule 54(b) requirements. See A.O. Smith Corp. v. Sims Consolidated Limited, 647 F.2d 118 (10th Cir.1981); United States v. Taylor, 632 F.2d 530 (5th Cir.1980); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166 (5th Cir.1978); Page v. Preisser, 585 F.2d 336 (8th Cir.1978). Other courts have applied a relation-back or nunc-pro-tunc validation theory to revitalize the premature notice of appeal on a belated compliance with Rule 54(b) requisites. See Jackson v. Tennessee Valley Authority, 595 F.2d 1120 (6th Cir.1979); Dougherty v. Harper's Magazine Co., 537 F.2d 758 (3rd Cir. 1976); Vale v. Bonnett, 191 F.2d 334 (U.S.C.A., D.C.1951).

Prior to December 1, 1959, when the Maine Rules of Civil Procedure became effective, the traditional methods of review of jury verdicts for insufficient evidence to support them consisted of 1) either a bill of exceptions allowed by the presiding justice based on an adverse ruling on the aggrieved party's motion for a directed verdict or for a new trial, or 2) a general motion for a new trial on the law and the evidence presented directly to the Law Court. As stated in the commentary to Rule 59, 2 Maine Civil Practice, Field, McKusick and Wroth, § 59.2, p. 59, the rules in the area of new trials "are not designed to effect any change," thus indicating that review of the question whether the jury verdict is against the law and the evidence as previously available pursuant to a general motion for a new trial presented directly to the Law Court was still viable by reason of the appeal from judgment itself.[3] Rule 73 abolishes appellate review *otherwise than by appeal,* expressly discontinuing review by bills of exception or the general motion to the Law Court. *See Werner v. Lane,* 393 A.2d 1329, 1331 (Me.1978). Rule 73 further provides that "[w]henever a judgment of the Superior Court ... is by law reviewable by the Law Court, such review shall be by appeal in accordance with these rules." Also, "[a]n appeal from a judgment, whenever taken, preserves for review any claim *of error in the record [such as that the jury verdict is against the law and the evidence] including* any claim of error in any of the orders specified in the preceding sentence [such as the denial of a motion for a new trial under Rule 59], even if entered on a motion filed after the notice of appeal." (Emphasis provided). We hold that in the instant case the issue, whether the jury verdict in favor of the defendant was against the law and the evidence, is properly before us for review.

■ We have carefully examined the evidentiary record before us and find that it presented factual questions for jury deter-mination. Driving her car at a speed of ten miles per hour and at a distance of two car lengths behind the plaintiffs' automobile on a clear morning, even while descending a hill on a wet but sanded roadway with ice patches mixed in, did not make the defendant's operation negligent conduct as a matter of law, as claimed by the plaintiffs. Skidding does not necessarily prove negligence. The defendant's limited speed, the severity of the downgrade, the freakish pattern of the ice patches, the plaintiffs' ability to stop their car without incident, the trivial impact of the vehicles, were all surrounding circumstances to be evaluated by the jury in determining whether the defendant failed to meet the standard of the reasonably prudent person under the existing circumstances. *Tinker v. Trevett,* 155 Me. 426, 156 A.2d 233 (1959). *See also Robichaud v. St. Cyr,* 150 Me. 168, 107 A.2d 540, 542 (1954).

### 2
#### *Violations of in limine rulings*

Prior to trial, the presiding justice granted two of the plaintiffs' motions *in limine.* He ruled that any evidence relating to Beverly Ann's former boyfriend, Daniel Staples, or to the living arrangement she had with him, was inadmissible, unless she testified that the inability to have sexual relations caused by the injuries received in the accident led to her subsequent divorce *and* that, since her divorce, these same injuries continue to impair her ability to have sexual relations. In another ruling, he indicated that all evidence relating to Beverly Ann's application for social security disability was excluded.

#### *a*
#### *Evidence of Beverly Ann's relationship with boyfriend*

■ During trial cross-examination, defense counsel asked Beverly Ann about the truck she had been driving.

---

**3.** Maine Civil Practice, Field, McKusick and Wroth, Vol. 2, p. 60, n. 1:

"A motion for a new trial *on any other ground than insufficiency of the evidence* must be made [to the presiding justice] in order to save the point ..." (Emphasis ours).

Q. .. and that truck rides kind of hard, doesn't it?

A. No, it does not, sir.

Q. It doesn't ride hard?

A. It rides better than my car.

Q. Okay. Who does that truck belong to?

A. Dan—

Plaintiffs' counsel objected on the basis of irrelevancy rather than on the basis of violation of the *in limine* ruling. Defense counsel did not pursue the question.

Later during cross-examination, defense counsel asked the plaintiff:

Q. And do you feel that this lack of sexual relations contributed to your divorce?

A. I can't say, sir, it was a part.

Q. If [It] was part of it, all right. Since you've been divorced, *you've been living with a Danny Staples, haven't you?* (Emphasis added.)

Plaintiffs' counsel objected to this question, but did not request a mistrial. The court stated that he would allow the question only if the plaintiff claimed that the lack of sexual relations led to her divorce *and* that she has a present inability to have sexual relations. During her testimony, Beverly Ann had stated that the impairment of sexual relations in part caused the divorce, but she had not as yet testified to having a present inability to engage in such relations. The justice then and there instructed the jury to disregard the defense counsel's question. Defense counsel then asked Beverly Ann whether, since the divorce, she was claiming an inability to have sexual relations. She answered no.

Assuming that defense counsel did violate the *in limine* ruling in relation to Beverly Ann's relationship with her former boyfriend, whether consciously or as a result of confusion, the violation in the instant case did not constitute error. It was within the sound discretion of the presiding justice to determine what, if any, prejudicial effect the whole colloquy before the jury had under the circumstances and what corrective measures should be taken. *See St. Pierre v. Houde,* 269 A.2d 538, 540 (Me.1970). In the instant case, where the plaintiffs made no request for a mistrial, there was no abuse of discretion in the presiding justice's giving to the jury of a curative instruction to disregard the offending question rather than ordering a mistrial *sua sponte.* 269 A.2d at 540. And, the jury must be presumed to have responded correctly by completely ignoring the particular matter as mandated by the judge. *Quinn v. Moore,* 292 A.2d 846, 852 (Me.1972); *McCann v. Twitchell,* 116 Me. 490, 493, 102 A. 740 (1917).

*b*

*Reference to Beverly Ann's application for social security disability*

In his ruling *in limine,* the court indicated that he would not "permit any evidence relating to either the application to Social Security or the granting or denial of any Social Security benefits." On direct examination of Dr. John McGinn by defense counsel, the following colloquy took place:

Q. When did you first see Beverly Olsen, the plaintiff in this case?

A. I first saw Beverly Olsen December 17th, 1980.

Q. At whose request did you see her?

A. At the request of the Mr. Wendell Burden from the Department of Disability Determination.

There was objection. On being reminded of the *in limine* ruling, the court stated:

I do not believe it's prejudicial to the plaintiffs' case, but I would ask [counsel for the defendant] to get onto another area and not explore it any further. I do not want anything in front of the jury for which they could reasonably reach a determination that she's receiving any kind of disability.

The plaintiffs' request for a mistrial was denied.

 Assuming, as we did in the other *in limine* ruling, that there was a techni-

cal violation by the defendant's counsel of the presiding justice's pretrial order in causing an indirect testimonial reference to a possible application for benefits by the plaintiff Beverly Ann Olsen to Social Security Administration, Department of Disability Determination, the presiding justice's decision on the plaintiffs' suggestion of mistrial was proper. In this jurisdiction, it is well established generally that a motion for a mistrial is addressed to the sound discretion of the trial justice. *Poulin v. Colby College*, 402 A.2d 846, 853 (Me.1979); *Cope v. Sevigny*, 289 A.2d 682, 690 (Me.1972). The plaintiffs' articulated objection to the admissibility of evidence of Beverly Ann's application to Social Security for benefits on grounds of physical disability pointed to the fact that such evidence would be irrelevant in the case "because the standard of proof or the standard for obtaining social security disability is different from the standard of proof in a civil action for personal injuries." We note here that there was no evidence respecting whether the application, if any application for benefits was actually filed instead of a mere inquiry on the part of Beverly Ann, was granted or denied. The mere reference of the plaintiff to Dr. McGinn by social security personnel was expressly determined by the presiding justice as nonprejudicial to the plaintiffs' case at that point. Any possible contrary finding seems too remote to form a proper basis for the grant of a motion for a mistrial. The presiding justice acted within the scope of his discretion in this instance.

### 3

*Request for further instruction on excessive speed*

■ In his instructions to the jury, the trial justice told them in relevant part:

As regards to statutory duties, one of our laws provides that any person driving a vehicle on a way, or any other place, shall drive the same at a careful and prudent speed not greater than is reasonable and proper having due regard to the traffic, surface, and width of the way or place or of any other conditions then existing.

\* \* \* \* \* \*

Driving an automobile in violation of law, if you find a violation of law, or of the rules of the road as I have been announcing here, raises a presumption of negligence. When it is a proximate cause of the accident, and if it is unexplained and uncontrolled, it is exclusive evidence of carelessness.

On the court's inquiry, whether there were any objections to the charge as given, the plaintiffs' attorney responded that there were none on behalf of the plaintiffs. On the court's inquiry, whether there were any other requested instructions, the plaintiffs' attorney addressed the court as follows:

Just for the record, I would like to voice the fact that I think excessive speed should be used here, because I don't think excessive speed goes only to the fact that it's over opposed to (sic) the limit, but that it's excessive to the particular conditions on that day.

Assuming, without deciding, that counsel's stated suggestion may be considered as a specific request for further instructions to the effect that there may be negligent conduct even though the motor vehicle was not being operated at a rate of speed over or beyond the posted speed limit, the presiding justice's refusal to further instruct the jury on excessive speed in reference to posted speed limits was not reversible error.[4]

Respecting the speed at which due care requires the driver of an automobile to operate the vehicle in order to negate negligent conduct, the court had properly instructed the jury in the general terms of the statute. The jury was told, as provided by 29 M.R.S.A. § 1252(1), that any person driving a vehicle on a way or in any other

---

4. We intimate no opinion respecting the legal propriety of this aspect of the charge as a whole. There was no objection raised to the use of the term "presumption," nor to its "ex-clusive evidence of carelessness" characterization. Under the circumstances, this part of the charge could only be beneficial to the plaintiffs.

place shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the way or place, and of any other conditions then existing. The statute articulates the all-inclusive duty owed at common law by motorists on our public ways, irrespective of penal statutes specifically prohibiting speeds in excess of particular speed limits under described circumstances enacted for highway safety purposes. The speed of an automobile, even if not prohibited under the regulatory limits enacted by subsection 2 of section 1252, may, by reason of *other conditions then existing*, become excessive speed or, in other words, a violation of the common law principle mandating the operation of vehicles at careful and prudent speed not greater than is reasonable and proper. The statute, § 1252(1), reiterates it, as did the court in its instruction. In the instant case, the posted speed limit in the area of the accident had no material bearing as such upon the defendant's duty of due care, since her operation was presumably under the posted speed limit. Despite the existence of higher posted speed limits, it is such conditions as the traffic on the way, its ice-patched surface in this case, its grade, and all other conditions then present, which may dictate the speed at which an individual exercising reasonable care may travel; in fact, a lesser speed than the otherwise authorized posted one. *See Reed v. Rule,* 376 A.2d 445, 447 (Me.1977). So, the jury was informed.

If the instructions as given are substantially correct, and the legal situation was apparently made clear to the jurors, there is no need to further elaborate the point. When the jury has been properly instructed on the legal principle involved in the case, its amplification in application or otherwise is left to the discretion of the presiding justice. *Desmond v. Wilson,* 143 Me. 262, 267, 60 A.2d 782, 785 (1948), and cases cited.

It may be that the presiding justice thought the giving of an amplified instruc-tion, as suggested by the plaintiffs, to the effect that excessive speed need not be a violation of the posted speed limit, where there was no evidence of any violation of the posted speed limit, would unduly emphasize an insubstantial particular state of facts. As stated in *Towle v. Aube,* 310 A.2d 259, 266 (Me.1973), any amplification or illustration in the manner of applying the stated principles of law to the various aspects of the facts in a case is a matter subject to the control and sound discretion of the presiding justice. There was no abuse of discretion in relation to the court's refusal to instruct on the point suggested by the plaintiffs.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.