Raymond J. PELKEY P.R. of Estate of Raymond D. Pelkey

v.

**CANADIAN PACIFIC LIMITED.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1991.
Decided Feb. 26, 1991.

---

Eugene C. Coughlin (orally), Vafiades, Brountas & Kominsky, Bangor, for plaintiff.

John W. Ballou (orally), Mitchell & Stearns, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

BRODY, Justice.

Plaintiff, father and personal representative of Raymond D. Pelkey, deceased, appeals from a judgment entered by the Superior Court (Penobscot County, *Smith, J.*) following a jury verdict finding for defendant, Canadian Pacific Limited ("Canadian Pacific"), in a wrongful death action involving a collision between an automobile and a freight train. Plaintiff contends that the Superior Court failed to properly instruct the jury as to the defendant's duty of care and improperly excluded testimony by three of plaintiff's witnesses. Finding no error, we affirm the judgment of the Superior Court.

On a November evening in 1984, decedent was driving southbound on Route 116 through dense fog. At approximately 5:45 p.m., decedent's car approached a railroad crossing just outside the town of Chester. The crossing was marked by a round sign located approximately 500–600 feet north of the crossing and crossbucks next to the tracks but did not have an automatic warning signal such as a flashing light, bell or descending arm.[1] Decedent's car reached the railroad tracks just as a Canadian Pacific freight train was crossing Route 116 moving at approximately forty miles per hour.[2] Decedent's car struck the freight train between the twenty-fourth and twenty-fifth cars and was dragged down the track. The next morning, a motorist noticed the decedent's wrecked car near the tracks and his dead body lying nearby. Neither the train conductor in the rear of the train nor the engineer up front realized that the train had been in an accident.

Plaintiff filed this wrongful death action against Canadian Pacific and the Maine Department of Transportation alleging that

1. Automatic warning signals are installed by the Maine Department of Transportation in accordance with guidelines established pursuant to a federal program that provides for grade crossing improvements. As a general rule, the decision to install an automatic signal is based on an assessment of the volume of rail and automobile traffic using the crossing. According to the Department of Transportation, railroad companies are under no obligation to install automatic warning signals but may file a petition with the Department of Transportation if they think improvements are necessary at a particular crossing.

2. Trial testimony indicates that the train was operating as it usually does under foggy conditions. The train crew maintained a speed well within that indicated by the signals, illuminated the train's ditchlights and headlights and sounded the whistle as the train approached the crossing.

their negligence caused decedent's death. The action was dismissed as to the Department of Transportation pursuant to the Maine Tort Claims Act. 14 M.R.S.A. § 8101 et seq. (1980). Plaintiff has not challenged the dismissal.

A jury trial ensued with Canadian Pacific as the sole defendant. The parties stipulated that decedent died as a result of the collision between his car and the Canadian Pacific train. It was the jury's responsibility to determine whether Canadian Pacific had breached its duty of care and, if so, to calculate damages. Answering special interrogatories, the jury found that Canadian Pacific had not breached its duty of care. Accordingly, judgment was entered in favor of Canadian Pacific. Plaintiff appeals from that judgment.

### Jury Instructions as to Defendant's Duty of Care

On appeal, plaintiff argues that common law principles require that a railroad be held to a higher duty of care than was instructed by the trial court.[3] Accordingly, plaintiff contends that the court erred in declining to instruct the jury as plaintiff had requested. We disagree.

A party does not have a right to a requested instruction unless it states the law correctly, appears to be supported by the facts of the case and is not misleading, confusing or already sufficiently covered in the charge as given. *Lambert v. Tripp*, 560 A.2d 1097, 1099 (Me.1989); *Schneider v. Richardson*, 438 A.2d 896, 897 (Me. 1981). If the instructions given by the trial court are substantially correct and the legal situation is made clear to the jury, the trial court's decision not to amplify or fur-

ther explain an instruction in the context of the facts of a particular case will not constitute reversible error absent a showing of an abuse of discretion. *Olsen v. French*, 456 A.2d 869, 877 (Me.1983).

Maine common law dealing with the operative standards of care at railroad crossings establishes the following principles: A train has the right-of-way at a grade crossing and it is the duty of the highway traveler to wait for the train. *Hesseltine v. Maine Cent. R.R. Co.*, 130 Me. 196, 199, 154 A. 264, 266 (Me.1931).[4] A train is not obligated to yield its right of way to automobile traffic except where it is apparent that a collision could not otherwise be avoided. A motorist must look and listen, "not simply with physical eyes and ears, but with alert and intent mind, that he may actually see and hear if a train be approaching." *Gould v. Bangor and Aroostook R.R. Co.*, 292 A.2d 837, 840 (Me. 1972). A collision at a railroad crossing constitutes prima facie evidence of negligence on the part of a motorist struck in the crossing by an approaching train or running into the side of a train standing or moving across the road. *Plante v. Canadian Nat'l R.R.*, 138 Me. 215, 219, 23 A.2d 814, 816 (Me.1942). If the motorist's view of the tracks is obstructed, even greater care is required from the motorist to look and listen. The care of the motorist and the railroad must be commensurate with the peril. *Gould v. Bangor and Aroostook R.R. Co.*, 292 A.2d at 840 (motorist must exercise greater care because view of tracks was obstructed by presence of a potato house, not owned by the railroad company). If, however, the railroad com-

3. We were not asked to reach the issue as to whether common law principles generally favoring the railroad over the motor vehicle have been abrogated by historical circumstances and scientific advances. Therefore, we do not address that issue here.

4. Maine also has a criminal statute which defines the duty of a motorist when entering a railroad crossing. 29 M.R.S.A. § 998 (1978). The statute provides in pertinent part:

   **Grade crossings; stop on approach of train**
   Every person operating a motor vehicle upon passing any sign ... which is located

more than 100 feet from a grade crossing shall, upon reaching a distance of 100 feet from the nearest rail of such crossing, forthwith reduce the speed of the vehicle to a reasonable and proper rate, observe in each direction and shall proceed cautiously over the crossing.... This provision shall be deemed to require a precaution in addition to the duties and precautions imposed by law on persons approaching or crossing a railroad grade crossing.
   Whoever violates this section shall be guilty of a misdemeanor.

pany causes "unusual peril," the railroad must meet such peril with unusual precautions such as slowing the train or sounding the whistle. *Ham v. Maine Cent. R.R. Co.*, 121 Me. 171, 175, 116 A. 261, 263 (Me.1922) (the presence of over-grown bushes in the railroad right-of-way obstructing motorists' view of the tracks is properly to be considered by the jury as one of the circumstances in determining the degree of vigilance that the company is bound to exercise in the running and management of its trains but the obstruction does not constitute negligence per se); *Richard v. Maine Cent. R.R. Co.*, 132 Me. 197, 201, 168 A. 811, 813 (Me.1933) (the presence of stationary, unlit rail cars in a highway crossing on a foggy night is to be considered by the jury in assessing the railroad company's conduct in exercising reasonable care to insure that automobile traffic travelling at a reasonable speed, properly equipped with lights and carefully operated would not come in collision with the train).

The trial court correctly instructed the jury as to the concurrent rights and mutual obligations of motorists and train operators at railroad crossings. The court told the jury that both decedent and defendant had a duty to exercise reasonable care under all of the facts and circumstances of the case, but that the train generally has the right of way at crossings. As given, the trial court's charge correctly states the common law principles operative in this case and places the jury on notice that it must consider the obligations of both the railroad and the automobile operator in the context of all of the facts.

Plaintiff's contention that the railroad created an "unusual peril" merely by operating its train on the night of the accident is not supported by the facts presented at trial. Witnesses testified that the rules and regulations governing the operation of trains are essentially the same under foggy conditions as under normal conditions except that in fog the rules instruct the train crew to brightly illuminate the headlight and ditchlights, sound the whistle as the train approaches a crossing, stay within the posted speed limits and stop the train if they cannot see the track signals. The train's engineer, Robert Dorian, testified that on the night of the accident the block signals were visible to the train crew, the whistle was properly sounded and the ditchlights and headlights were properly illuminated. The trial testimony also established that the train was travelling at forty miles per hour, well within the forty-five mile per hour speed limit posted at the crossing. Having complied with regulations, Canadian Pacific had no further obligation under the common law to cease normal operations because of the presence of fog. It was for the jury in this case to decide whether, in the exercise of reasonable care, the railroad personnel should have taken extraordinary precautions such as dropping flares or placing a flagman at the crossing. In this case, the jury determined that reasonable care did not require the railroad to take such precautions. The presiding justice committed no error in declining to give an instruction indicating that extraordinary precautions were required as a matter of law.

### Exclusion of Testimony Regarding Out-of-Court Statements by Defendant's Employees

■ Plaintiff contends that the trial court erred in excluding, on hearsay grounds, testimony by Wallace Blowers, a Canadian Pacific engineer, relating to statements made to him by other Canadian Pacific engineers regarding the safety of the Chester railroad crossing. We find no error in the court's evidentiary ruling.

At trial, plaintiff called Blowers to testify about a letter he had written to the Bangor Daily News that was published approximately one month after the accident. Blowers' letter was a response to published letters written about the accident by people in the Chester community. Blowers sought to explain the rules about speed and whistle blowing requirements at crossings. In the letter, which was read to the jury, Blowers expressed his opinion that flashing lights were long overdue at the Chester crossing. Blowers was then asked by plaintiff's attorney to describe the feed-

back he got from other Canadian Pacific engineers in response to his published letter. The court sustained Canadian Pacific's hearsay objection. Plaintiff contends the testimony was admissible pursuant to M.R.Evid. 801(d)(2)(D).

M.R.Evid. 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is made by the party's employee concerning a matter within the scope of his employment and during the course of the employment. Canadian Pacific contends that the out-of-court comments of its engineers were not made within the scope of their employment because the engineers are not involved in decisions related to the safety of railroad crossings.[5] Indeed, the testimony given at trial established that it is the duty of the Department of Transportation, not Canadian Pacific, to install and maintain automatic signals at railroad crossings to protect the safety of motorists. The trial court reasonably concluded that the comments were hearsay because they were not made within the scope of the engineers' employment. Because the hearsay statements do not fit within any exception to the hearsay rule, the court correctly excluded them.

### Exclusion of Testimony from Motorist

Plaintiff further contends that the trial court erred in excluding testimony from a motorist who would have testified about her inability to see a train in the Chester crossing during a rain storm a month or two before decedent's accident. According to the plaintiff, this evidence was relevant to establish that a dangerous condition existed because the reflectors on the sides of the freight cars were insufficient to enable motorists to see the train in poor weather.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. M.R.Evid. 401. We review the trial court's ruling on

the issue of relevancy for clear error. *State v. Dechaine,* 572 A.2d 130, 133 (Me. 1990). Even though evidence is relevant, it may be excluded by the trial court pursuant to M.R.Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The trial court's decision to exclude evidence under M.R.Evid. 403 is reviewable only for an abuse of discretion. *State v. Tanguay,* 574 A.2d 1359, 1360 (Me.1990).

In a negligence action, evidence of other occurrences may be relevant to show the existence of a defective or dangerous condition, notice thereof or causation on the occasion in question. *Marois v. Paper Converting Machine Co.,* 539 A.2d 621, 625 (Me.1988). Thus, the motorist's testimony was relevant. The trial court was concerned, however, that the motorist's testimony would unfairly arouse an emotional reaction from the jury because she would have told the jury she was driving in a car with four children and a friend. Because the visibility of the train on a night other than the night of the accident is only of tangential consequence to the matter at issue here, the trial court correctly concluded that the probative value of the motorist's testimony was substantially outweighed by the danger of unfair prejudice. We conclude that the trial court did not abuse its discretion in excluding the evidence pursuant to M.R.Evid. 403.

### Exclusion of Expert Testimony

Finally, plaintiff contends that the trial court erred in declining to allow plaintiff's expert witness, Robert Mitchell, to state his opinion as to the conduct of the railroad personnel with respect to safety on the night of the accident.

M.R.Evid. 702 governs the admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of

---

5. Canadian Pacific also contends that the comments were properly excluded under M.R.Evid. 701 which limits the admissibility of non-expert

opinion testimony. Because we conclude that the comments were properly excluded on hearsay grounds, we decline to address this issue.

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

In applying this rule, the trial court must consider whether the matter is beyond common knowledge so that the untrained juror will not be able to determine it intelligently and whether a person with specialized knowledge can give a helpful opinion. *F.X. Bilodeau Realty, Inc. v. Lewiston Urban Renewal Authority,* 237 A.2d 398, 400 (Me. 1968). In addition, the trial court must determine whether an expert witness possesses the requisite qualifications to form an expert opinion. This determination is committed to the discretion of the trial court and will not be disturbed on appeal absent a showing that the discretion was abused. *Hodgdon v. Jones,* 538 A.2d 281, 282 (Me.1988). After hearing counsel examine Robert Mitchell *in camera,* the court concluded that Mitchell, a former chief of the New Jersey Department of Transportation's Grade Crossing Safety Section, had extensive experience with crossing signals and signs and allowed him to testify as to his opinion regarding the need for such signals at the Chester crossing. The court concluded, however, that Mitchell had no experience operating train and, thus, was not competent to express an opinion that the train ought to have stopped and dropped flares before crossing Route 116. We cannot say that the trial court abused its discretion in excluding Mitchell's opinion testimony.

The entry is:

Judgment affirmed.

All concurring.